Thank you, Your Honor. May it please the Court, I am Marc Randazzo on behalf of AMA Multimedia. If it's okay with the Court, I'd like to reserve five minutes for rebuttal. Please watch the clock. Yes, Your Honor. Your Honor, this case is really two-pronged. One issue before the Court is whether or not, with the evidence that's already in the record, my client has established jurisdiction over the defendant or the appellee under Rule 4k-2. And we believe that we have. The other issue, you know, we're in somewhat of a strange situation. It's not very often that I get to the third line in reviewing my briefing and find that I am completely wrong where I say very strongly the Polish data protection policy governs this case strongly. And as we've identified, that's been repealed since that briefing. Can you help me understand what difference that makes to this case here? So the discovery is closed and the discovery, I guess, took place under the prior law. And there's claims that the magistrate judge of the district court erred in applying the prior law. So now the law has been changed. How does that affect our analysis of the magistrate judge's handling of the discovery? I guess it depends upon how you feel about 4k-2. If we have not established it, our hands were very heavily tied because the claims that the appellee made were, I mean, I'm sorry, the appellee made, were that really they couldn't give us anything relevant under the Polish data protection policy, including stuff like who is your business partner? And his response was we can't give that to you because we would go to prison if we did that under the Polish data protection law. So we would ask that if it's remanded for further findings under 4k-2 that we reopen discovery with an eye toward what the law is now. So what would be the basis for remanding on 4k-2? Because you're, or I shouldn't say that, on jurisdiction because 4k-2 is a procedural rule as they all are. And so the real question is whether the district court had jurisdiction over Mr. Wanut, if I'm pronouncing that right. And so your argument is based on the evidence in the record now that there was jurisdiction, I take it. Yes. And so what would, so again, I'm wondering how would the new law come into the picture? Well on remand we believe that discovery should be reopened. So if we agreed with you that there was jurisdiction over Mr. Wanut, then would there be further discovery of the of jurisdictional facts? Or are you just saying the magistrate judge would then be free to apply then current law? So I guess I'm still not understanding. Well, we would be, the magistrate judge would be free to apply current law, however. Right, but it would have nothing to do with this appeal. No. Right? Yes. At the time when we filed the appeal, the PDP issues were, I found, pertinent. But given that it's been repealed, they aren't. So it would have to be, we would have to find that there was errors under the old law and then say, and if those errors had been corrected, potentially there might have been jurisdiction. So we would send it back for more discovery. Is that when the new law would kick in or what? I think what would be more proper is if we aren't at 4k2 jurisdiction already, which I believe we are, but hypothetically speaking if we aren't, remand with further proceedings with GDPR compliant discovery in place. Because the law has changed since we filed the appeal. Okay, but in either event, we wouldn't. I was just going to say, I understand your position to be that there are insufficient contacts with the U.S. to have jurisdiction now, in which case, since the district court said there wasn't jurisdiction, I guess we would just reverse that and remand it to the district court. Then it would go wherever it went. Yes, Judge Gould. So I think that's really where the focus is. I just wanted to see whether we had to look at GDPR and I didn't really see any reason we would have to consider it and you haven't told me anything otherwise. I have prepared to discuss it because of this court's order telling me to. So really I'm prepared to focus on 4k2. Okay, so you're not returning to your arguments that the district court erred in the discovery errors in its rulings under the prior law? If we have jurisdiction under 4k2, then no. If we do not, if there is more information that you feel is necessary to establish that, we were only able to gather the information that we could gather from third-party sources in establishing our jurisdictional claims. We couldn't get anything out of the defendant below. Because at every every juncture we were told because it's prohibited under the Polish data protection law, we can't give that to you. Now, I think that was incorrect. I think that was a misapplication of the Polish data protection law and if we were to analyze it under current law under the GDPR, I think that would be incorrect as well. However, given the nature, quality of the contacts with the forum country under 4k2 and given the fact that there was express aiming and taking advantage of the U.S. market on such an extensive basis by the defendant that it was simply even with the limited discovery that we could get through third parties, we did establish 4k2 jurisdiction. So I understand that WANET has a global website that is essentially passive. I think the district court found that that WANET itself or himself did not did not upload that he provides a platform for other persons to upload videos. Is that correct? Well, both of those statements can't be correct. If it's passive. Well, did the district court make that finding? That is how the district court found it. Okay. But both of those can't be true. And so are you saying that that's a clearly erroneous finding? And did you because I don't think you argue that that was clearly erroneous. You talked about organization, but of I don't know that that was raised to the district court. Organization of the videos. We brought it. We brought this under a de novo standard of review. So I wasn't attacking it at that granular level, but both of those statements absolutely cannot be true. If it's a passive website, then where does the content come from? It must come from within the organization. I thought the business model was that WANET had a platform where other people were uploading the videos. Well, if that's the case, then it's highly interactive because if the videos are actually... I understood that was what the evidence showed. Is that incorrect? That other people were uploading the videos? No, that is what WANET claims. We do not believe that's the case. And even if... But that's what the district court found. And if we take him at his word and if we take that finding as correct, well, there are still other pages on the site where, you know, essentially this video was taken. We believe that the partnership itself uploads the videos. We believe that we can show that. However... But the district court found otherwise, I guess. Are you asking us to overrule the district court that you've provided us additional facts? I guess I'm not understanding the tenor of your argument. We don't have that at this point, Your Honor, because we haven't been able to... Okay, so we have to accept the district court's finding on this point. At least for now. But once we get jurisdiction, we reopen discovery. We believe we will be able to show this. But if you don't get jurisdiction, if we uphold, if we affirm the district court that there's... Do you believe that there's grounds for doing additional discovery to revisit that question? I do, Your Honor. And is that question relevant to jurisdiction or is it more relevant to ultimate liability? No, I think we're just at jurisdiction at this point. So your position is that would be a highly relevant inquiry into jurisdiction? Yes, Your Honor. And you should be entitled under the new law to re-seek discovery that would help you establish those points? If you do not believe that under the record that we have right now that we have jurisdiction under 4k2, which again... Counsel, if I'm... If I'm understanding, just to try to simplify this in my own mind, your position is that there's jurisdiction under Rule 4 on the current record. But alternatively, if we're not persuaded of that, then you would ask us to vacate the ruling that was made by the district court of no jurisdiction and remand it so the district court can do discovery or permit whatever other proceedings it thinks are correct. Precisely, Your Honor. And that's based on your argument that the district court erred in its discovery rulings? Yes, Your Honor. Okay. Is there any... I take it there's no evidence before the district court below about this new Polish law because it was adopted. Am I correct? It was adopted after the decision already came out? Yes, it was adopted after that. So no, there's nothing before the court for that. But for purposes of determining whether the district court erred in its discovery rulings, we're just looking at the PDP, right? We would look at the PDP. However, I think given that there's been a change in the law, I think on remand, it would be appropriate to give instructions on the GDPR or frankly... The first step is to say there was an error in discovery and so you're entitled to additional discovery. So my question is if we're trying to determine whether there was an error in the discovery rulings, we're only looking at the discovery rulings under the PDP. We can look at it under the PDP, but I feel that even... Is that correct? It's not necessarily an interpretation of the PDP. I don't think you're asking answering my question. Well, Your Honor, I think you're asking me if I'm not incorrect, you're asking me should we re-look at the interpretation of the PDP? And I think that... That was your arguments in the brief was that the magistrate judge had erred in interpreting the PDP and therefore made erroneous rulings on discovery. And so if we determine that... In evaluating this claim, we're not applying any new law. We're just looking at the PDP as it existed when those rulings were made. That's my question. And I think, Your Honor, that not only were the rulings under the PDP erroneous, but the application of it was erroneous. Instead of looking at the PDP or if we look at the GDPR, as an element of the comedy analysis, as an element of whether or not this discovery should be permitted, I think that's getting too granular. I think that even if you have... Let's say the PDP actually does prohibit this. The PDP was completely correctly interpreted by the judge as if she were on the Supreme Court of Poland. I don't think that's relevant. Every other case that we've looked at is very clear in that it says that U.S. courts are not necessarily, not at all bound by foreign blocking statutes. Because if this is the case, if this interpretation of the PDP is correct, then this case will be a marvelous blueprint for any company that wants to relocate to Poland and steal the intellectual property of Silicon Valley or Hollywood. You're down to two and a half minutes. Do you want to save that? I would like to save that, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, my name is Jacob Medrana, and I represent the appellant Martin Wannab in this case. A district court's decision to permit or deny jurisdictional discovery is reviewed for abuse of discretion. The district court's refusal to provide such discovery will not be reversed, except upon the clearest showing that the denial of the discovery results in actual and substantial harm to the complaining party. And Your Honors, I ask you today to affirm the district court's decision to dismiss this case against Mr. Wannab. The Court must affirm the district court's decision because the lower court correctly concluded that Wannab did not have enough minimum contacts with the United States as to exercise jurisdiction over him. How do you distinguish the Mavericks case? The Maverick case is, I don't want to say easily distinguishable, but it is completely different. In the Maverick case, we dealt with a website that was highly interactive, that targeted through advertisements and through a sale of subscriptions California residents, and also it took advantage specifically of the California celebrity appeal. The website was directed specifically to California clientele. In this regard, the difference with this case is that here we're dealing only with a website. Consul states it's interactive, but it's interactive only one way. It's people who can upload it to the website, but they're not getting anything else in return. They're uploading the videos. So is it your position that your client never uploaded any videos? Yes, this is our position. And was there discovery produced that would have been able to get to the discovery? A lot of discovery was produced, and I would disagree with the consul saying here that we didn't produce anything. We actually did produce a lot of records, including records that were produced after the special master's report of recommendation was affirmed, and those were amended answers. There's only a certain set of documents and data that we didn't produce, and I have a list of those if your honors would like me to go through it to actually describe why they're insignificant to this case. But we did produce discovery. We also produced Juana's declaration where he stated he did not upload those videos. He described the systems, how the videos are being processed. The plaintiff did have an opportunity to depose Juana. They didn't choose to do it. Simply, they relied on written discovery that we, of course, objected in ground part, but they did receive a lot of those issues. And would discovery have been produced that could have identified who uploaded the videos that they were complaining about? And that is a very interesting question, because even though we objected to this request for production to disclose the identities of the uploaders, we also stated that we don't have this information, because at the time when the videos were uploaded, the uploaders were able to and Mr. Juana actually did conduct a thorough search, because it was in his own interest to determine who uploaded the videos, because we believe that could be someone who did it on purpose. But we were not able to determine this, and we simply don't have this information. Therefore, even if the lower court forced us to disclose the identities, the personal data of concerning the uploaders of the videos, we would not be able to. But you would produce information that would show that it was anonymous, at least, and you didn't produce that information. We're just taking your statement that it was. We, as far as I remember, we produced a statement to this effect. Yes, under oath. Tell me about the advertising dollars that you receive in the United States. Is it true then that you have no subscriptions, you don't receive any subscription money? Do you have any clients that are subscribers that pay you to use this? There's no subscriptions. It's a free website? Yes, it's a free website. It sort of works at YouTube, where people can upload the videos, except that it's for a specific subject. And so you're getting, the way the business is making money is through advertisements, is that correct? Those advertisements are specific to the markets in which, do you have different advertisements in the United States than you have in the United States? The website contracts with only a few advertisers who are all located either in Europe, as far as I remember, Spain, I think in Canada there is one, I'm not sure. I have it on the record. But the way it works is the website sells the advertising space to those companies, to these advertising companies, and they decide what type of advertising they're going to put into this slot sold to the advertising companies. So the website does not have any control over what type of advertising is displayed in a given location. So your income is from, I didn't understand that, it's from the distributors? You sell to companies and you get monies from companies who just have the opportunity to use the advertising space for whatever they want? Yes, yes. The money that is being made is being made from the advertising companies. Between the middleman, you don't get money from the advertisers themselves? No, not directly. Okay. Yes, the money is being made. Do you have any control over who advertises? They could advertise whatever they wanted. Only in the way of picking the advertisers. No, they have no control over what is actually being advertised. Well, if they wanted to advertise for, say, a competing company, would you have a veto power to say, wait a second, we're not going to let you put that up on our website? As far as I remember, no. Yes, I believe we did actually produce information how it works. As far as I remember, we don't have this opportunity system. I did want to ask about the Polish law because it's troubling to me that you can stand behind a European Union law, or I guess this is a Polish law initially, now it's been repealed and adopted an EU version. But why couldn't information be produced under a protective order that would comply with Polish law? We produce confidential documents all the time, and I find it hard to believe that in a day and age where, you know, Facebook can an opposing party, that a website owner in Poland couldn't find a way to produce that information that also complies with Polish law. Yes, and this is a very good question, and in a way it does defy common sense. But when you look at Polish law, when you look at European law, and the importance that the European law places on data protection, actually this is one of the fundamental rights of the European Union, the law is simply written this way. As I understand it, the law is written in a way to say you can't give it to another party that doesn't have certain security protocols. And while it's true that certain US web-based services don't have those security protocols, why couldn't you adopt a protective order that would require the other party to adopt these consistent with that? Or produce it within Poland, and they could come over and view it in Poland? So there is a way to produce this information in Poland through Polish courts. There is a way to do it. So this is one of the things that I disagreed with a special master when she issued her report. She said that there is no other avenue for the plaintiffs to get this information. There is another avenue, there is a specific statute actually to get the information. But the reason we cannot produce this is because that would be a violation of the Polish law. And to highlight this fact, there is in the new law, GDPR, there is a specific provision in, I believe it's Article 48, that deals exclusively with the legal process in a situation where a court orders disclosure, a foreign court orders disclosure of protected information. And this article states that any judgment of a court or tribunal and any decision of an administrative authority of a third country requiring a controller or processor to transfer or disclose personal data might only be recognized or enforceable in any manner if based on an international agreement, such as a legal assistance treaty enforced between the requesting third country and the union or member state. Do we have any such agreement? There is no such agreement yet. Okay. Between the United States and Poland. Yeah. And between the United States and the European Union. There has been no such agreement in this situation. So any order, of course, if the court orders to comply with the request for documents, we would do it, even though we would expose ourselves to liability. But why couldn't you, that's what my question is, couldn't you limit that liability by, I just don't, I have a hard time believing that the European Union says you can't produce this under any circumstances. I could understand where they say you have to produce it in certain protected requirements. Now, what you're reading suggests that it has to be a global agreement. So that does pose a problem here. But is there any way that the parties could get together and agree to effectively a protective order that includes security protocol that would comply with Polish law? Under the current state of law, there is none. So opposing counsel in one of their arguments is that the customers or the users of this website have already consented to an exception, at least under the old law. And they point to contracts or terms of service. Yes. And this is something that was not raised in the lower court. So this is an issue that was raised on the appeal. So I'll ask the court, but I'll still answer this because there is a very clear answer to this. Both the PDP as well as the GDPR describes what a consent is. And it now requires that when someone uploads information to website, there has to be, I can't even cite the provision what it is, there has to be kind of like a drop box to make sure that the person agreeing to the terms knows exactly what she is doing. And that has not been done in this case. The opposing party is referencing sort of a terms of condition statement. It's pretty much saying, if you access the website, you agree to transfer your information. But this is not something that is allowed under any of the regulation, both the PDP and the GDPR. The consent, there's a definition of consent under GDPR. Let's see. Article seven, actually. There's a whole article about conditions for consent. I'm not going to read the whole rules, because there's four different paragraphs, but it talks about the written declaration. The definition of the consent is actually... So I'm inferring it's a specific and detailed requirement that whatever language they're pointing to in the terms of use doesn't, in terms of service, doesn't meet. That's the position. And under PDP, there was actual requirement of a written consent. The person submitting the writing that the information would be disclosed. Do you believe that there is a discovery that was not produced because of the old law that you would be able to produce based on the new European law? No, I do not. I do not. But one of the issues that I would like to raise is this notion of us not disclosing the identity of the business partner, because this is one of the arguments that the other side made. The problem with that is that we were never asked to disclose the identity of the business partner. And we were asked to disclose the identities of e-pornor registrant, of many other people, but we were never asked to disclose the identity of the business partner. Had we were asked that question, we would have disclosed it because that's public information. But there was no... You said it is public information? It is public information. Well, then maybe they don't even need to ask? Yes, and they already have it. So the information that was not disclosed and that... Yeah, and maybe you're going here with the last remaining... Is there any information that you didn't disclose that would actually be relevant to discovery? No, no. And that's exactly what I was trying to do because the information we didn't disclose was the name of the registrant of the website, whom we already know has nothing to do with the U.S. We were asked to disclose the advertising agreements of the company that have nothing to do with the U.S. There is no advertising agreements between the website and the U.S. companies. We were asked to disclose information concerning the website PayPal account that was registered in Luxembourg. Not here. This has nothing to do with the U.S. The identities of the uploaders, as I said, we don't have this information, although such information would be useful. When these arguably legally offending videos were put up and you got challenged by them, have you taken them down now or you let them stand? Yes, we produced a list of videos that were noticed and also taken down. We produced it during the discovery. And if additional protected videos from these parties were posted by a third party to your website, would you agree to take those down in the future? Absolutely. And the website, I can already represent that they implemented a system. Of course, none of the system is without errors, but they implemented a system to specifically look for videos that perhaps might belong to the plaintiffs to automatically kick them out of the website. Okay. I think we have your argument. Thank you. Thank you. You have a few minutes for rebuttal. Your Honor, I may have a very different view of the record than my friend, so I would urge you and your clerks to review the record along with this transcript because as a primary matter, just the issue of what evidence do you believe was not produced that would be relevant to discovery? Well, you've mentioned one that it sounds like there's a dispute on as to who the co-owner is. We don't believe them that they don't have the information. What information? There are data logs that will show at least where the information was uploaded from. When we asked for that information, like every other bit of information we asked for, we were told, sorry, we would give it to you, but we will go to prison. What does that matter for jurisdictional purposes? Because if it was uploaded in the United States, would that mean that there's jurisdiction here? That would certainly help. But also, if they're uploaded from perhaps an IP address that is directly right where this company's headquarters are, that's another story. But they told us they can't even give us anonymous information, which isn't true. These statutes do not apply to anonymous information. They don't apply to information that you could redact personal information from. They told us that redacting would subject them to criminal penalties. So the special masters have found, correct, that redaction constituted erasure and that constituted processing and was precluded under the PDP. Yes, she did say that that is her conclusion. She did say in her report she could not find a single case nor a secondary source that supported that, and that is contrary to the plain language. Now under the GDPR, we heard about a number of articles here saying maybe we could do it this way, maybe we could do it that way. But what we didn't hear was about Article 49. Article 49 of the GDPR, like its prior counterpart under the Polish Data Protection Act, specifically says that you can give this information up in a legal proceeding, the end. You also identified consent, correct? So the magistrate judge said only if the holder of the information is doing it for a legal proceeding for that person's legal claims, not for a plaintiff suing the holder of the private information. Yes, the determination below was you could only produce it if you're suing somebody, not if you're defending yourself. I don't buy that. I don't see how the language of the statute says that. But that's the old statute, not the new one. Correct. The GDPR does actually have, it says for both. The Polish one didn't say, it just said for legal claims, and they interpreted it that way. Okay, you're over your time now. Can you wrap up please? Yes. So I would ask the court to, there's a lower court decision, doesn't bind you of course, but Fingen, Inc. versus Zscaler out of the Northern District of California, 2019, U.S. District, Lexis 24570, does a brilliant job of analyzing this very issue. So it goes through the factors, and it also recognizes that we're not going to allow foreign blocking statutes, anybody, no matter what country you're coming from, to say, we would love to participate in this litigation, but we can't because we have a foreign statute that doesn't allow it. You can get consent. We say there was consent. But I'd also like you to remember that they didn't ask for consent. All of these people that they say, now we don't have any information. On appeal, we find out that they claim they don't even have it. I think we have your argument. Thank you, Your Honor. Thank you. The case of AMA Multimedia LLC versus Marcin Wanat is submitted. Thank you.
judges: Gould, Ikuta, Nelson